IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **VEXCON CHEMICALS, INC.,** : | |
| : | |
| **Plaintiff,** : | |
| vs. : | **CIVIL NO. 07-943** |
| : | |
| **CURECRETE CHEMICAL CO., INC.,** : | |
| : | |
| **Defendant.** : | |

**MEMORANDUM OPINION AND ORDER**

Rufe, J.                                                                                          **March 28, 2008**

     This matter comes before the Court on the Defendant's Motion for Summary Judgment based on Lack of Standing. After reviewing the Defendant's Motion [Doc. No. 24], Plaintiff's Response [Doc. No. 30], Defendant's Reply [Doc. No. 46], Plaintiff's Sur-Reply [Doc. No. 51], and the Supplemental Response Memoranda filed by the parties [Docs. No. 83, 84], the Court will grant Defendant's Motion for the reasons stated below.

**I. BACKGROUND**

     Plaintiff Vexcon Chemicals, Inc. ("Vexcon") filed this action in March, 2007, against Defendant CureCrete Chemical Company, Inc. ("CureCrete") alleging one claim for false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a). Vexcon and CureCrete both sell construction products, "primarily in the field of concrete treatments," including densifiers, scalants, and cures.[1] Vexcon asserts that CureCrete falsely misrepresents that its product, Ashford Formula ("the Formula"), cures concrete, as the term is defined by the American

---

[1] Compl. at 2.

1

Standard Test Management ("ATSM")[2] and the American Concrete Institute ("ACI").[3] CureCrete maintains that the Formula cures, densifies, seals and hardens concrete, and that its advertising is not false, as it is admittedly non-compliant with the ASTM and ACI standards.[4] CureCrete filed this Motion for Summary Judgment claiming Vexcon lacks standing to bring this lawsuit because it has failed to show a reasonable belief that it will be injured as a result of the alleged false advertising.[5]

The Court entertained oral argument on the Motion on February 11, 2008. CureCrete submitted the deposition testimony of Vexcon President and Federal Rule of Civil Procedure 30(b)(6) corporate representative/designee Darryl Manuel, asserting that Manuel's testimony that sales of the Ashford Formula as a curing agent have no effect on Vexcon's sales[6] shows Vexcon's lack of personal stake in the outcome of the litigation, defeating all three of the relevant tests for standing in this matter: (1) standing pursuant to Article III of the Constitution; (2) standing under the Lanham Act; and (3) prudential standing, as interpreted by the Third Circuit.[7] Vexcon responded by arguing that it has standing because it is, in fact, a direct

---

[2] The ASTM is a volunteer organization for the development of market standards for materials. The ASTM Committee 9 and specifically C922 "work on the development of specifications for curing of concrete, sealing concrete, and those items that can be applied up to 30 days." Pl.'s Resp. Ex. C (Manuel Dep.) at 34-35. The standards are published to give guidance on approved industry standards, but the ASTM has no official regulatory power. Darryl Manuel, Vexcon's current president, was the chairman of Committee C922 from 1995 to 2006. Pl.'s Resp. Ex. C (Manuel Dep.) at 28.

[3] Id. at 3.

[4] Answer at 2.

[5] Def.'s Mot. at 2.

[6] Pl.'s Resp. Ex. C (Manuel Dep.) at 349-51.

[7] Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 179 (3d Cir. 2001).

competitor of CureCrete, and while it does not have one Ashford Formula equivalent, it does have two products that provide the same effect on concrete, in the aggregate.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(c), the Court should grant summary judgment to the moving party if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8]  In making this determination, the Court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."[9]

There are three applicable tests for standing in this matter; if Vexcon has established a genuine issue of material fact regarding standing under any, summary judgment is not appropriate here.

### B. Constitutional Standing

Constitutional standing is "'the irreducible constitutional minimum'" of standing.[10]  To establish standing under the U.S. Constitution, the plaintiff must show:

> (1) an injury in fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative that

---

[8] Fed. R. Civ. P. 56(c).

[9] Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted).

[10] Joint Stock Society, 266 F.3d at 175 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

the injury will be redressed by a favorable decision.[11]

The party seeking to establish jurisdiction, here Vexcon, bears the burden of showing these elements by a preponderance of the evidence.[12] Moreover, when standing is raised in a dispositive motion, the plaintiff cannot rely on mere allegations, but "must 'set forth' by affidavit or other evidence 'specific facts'" to support its claim of jurisdiction.[13]

CureCrete argues that Vexcon has not shown an injury in fact, much less injury that is actual or imminent. This argument is based solely on the deposition testimony of Darryl Manuel, president of Vexcon and F.R.C.P. 30(b)(6) designee, which is, in pertinent part:

> Q: Did you believe that if you succeeded [in stopping CureCrete from saying their products cured concrete] that would have a positive effect on Vexcon's business?
>
> A: It was a neutral effect.
>
> Q: What do you mean by neutral?
>
> A: It would have–what effects it would have would be neutral to our business.
>
> Q: So it wouldn't mean you would sell more products?
>
> A: That's what it would mean.
>
> Q: Are you saying by neutral, that you mean that you did not think that it would increase your sales?
>
> A: That's correct.
>
> Q: And you still believe that today?
>
> A: I believe that when we look at the specifications that exist, when they have

---

[11] Lujan, 504 U.S. at 560-61.

[12] Id. at 561.

[13] Joint Stock Soc'y, 266 F.3d at 175 (quoting Fed. R. Civ. P. 56(e)).

them, they don't say to use Vexcon products in place of that. They just say cure the concrete in the following methods, and the method in use today and for the last eight or nine years is with curing blankets. So it makes no difference to Vexcon's business.[14]

Thus, because Manuel's testimony was provided pursuant to 30(b)(6), in his designation as Vexcon's corporate representative, his admission binds plaintiff to the position that Vexcon has suffered no injury in fact. Furthermore, Manuel admitted that if the Ashford Formula were no longer offered on the market, Vexcon's products would not be used in its place.[15] CureCrete thus argues that there is no injury, nor any admitted threat of future injury as a result of the alleged false advertising. Therefore, without injury, past, present or future, no genuine issue of material fact exists.

### C. Lanham Act Standing

Congress may impose requirements for establishing standing in addition to those articulated in Article III, and the Lanham Act explicitly requires a plaintiff demonstrate it has a reasonable belief of injury to establish standing.[16] Thus, even if Vexcon could establish constitutional standing, it would also have to establish such under the Lanham Act.

To establish standing under the Lanham Act, the Third Circuit requires a plaintiff to show a "reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false

---

[14] Pl.'s Resp. Ex. C (Manuel Dep.) at 349-52.

[15] Id. at 352.

[16] 15 U.S.C. § 1125(a) (stating that "any person who . . . misrepresents the nature . . . of his or her or another person's goods . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act").

5

advertising."[17] The showing necessary to satisfy that standard depends somewhat on the remedy sought and the circumstances of the alleged infringement.[18] The Third Circuit has held that standing under the Lanham Act is not presumed, but that there must be "a more substantial showing where the plaintiff's products are not obviously in competition with defendant's products, or the defendant's advertisements do not draw direct comparisons between the two" to establish likelihood of injury.[19]

In addition, the Third Circuit has drawn distinctions in the trademark context between plaintiffs seeking an injunction and those seeking damages. In <u>Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v Rhone-Poulenc Rorer Pharmaceuticals, Inc.</u>, the Third Circuit held that a plaintiff who "proves a challenged claim to be literally false" can establish damages without showing that the public was misled by the false advertisements.[20] Alternatively, a plaintiff seeking damages under the Lanham Act may establish standing by showing customer reliance on the false advertisements, but not a loss of sales.[21] In contrast, a plaintiff seeking an injunction need not show that the public has been deceived, but that the advertisements have a "tendency to deceive" in order to establish standing.[22] Lastly, in <u>Warner-Lambert Co. v. Breathasure</u>, the Third Circuit held that a plaintiff seeking an injunction may establish standing

---

[17] <u>Novartis Consumer Health Inc. v. Johnson & Johnson Merck</u>, 290 F.3d 578, 595 (3d Cir. 2002) (quoting <u>Warner-Lambert Co. v. Breathasure</u>, 204 F.3d 87, 95 (3d Cir. 2000)).

[18] <u>Breathasure</u>, 204 F. 3d at 92.

[19] <u>Id.</u> at 95.

[20] <u>Johnson & Johnson-Merck</u>, 19 F.3d 125, 129 (3d Cir. 1994).

[21] <u>Parkway Baking Co. v. Freihofer Baking, Co.</u>, 255 F.2d 641, 649 (3d Cir. 1958).

[22] <u>Id.</u> at 649.

by showing that the advertisement was literally false and that the parties were competitors "in general."[23]   A party seeking both an injunction and damages, as Vexcon does here, must meet both the standard of proof for an injunction as well as that for damages.

CureCrete argues Vexcon cannot establish a reasonable belief of injury "because it has no belief that the allegedly false advertising has affected or will affect its sales, let alone a reasonable basis for such a belief."[24]   Citing Breathasure for the proposition that likelihood of injury cannot be presumed, Curerete argues that Vexcon must demonstrate that it reasonably believes it will be injured.[25]   It contends Vexcon has done just the opposite, pointing to Manuel's deposition testimony admitting that he, as representative for the plaintiff, had no belief that his company would be injured by the alleged false advertising.[26]   Manuel stated "I *believe* that when we look at the specifications that exist, when they have them, they don't say to use Vexcon products in place of [Ashford Formula] . . . . *So it makes no difference to Vexcon's business*."[27]   This, CureCrete argues, is dispositive proof that Manuel, and hence Vexcon, had no reasonable belief of injury.

Vexcon maintains that it is a competitor of CureCrete's Ashford Formula, and that CureCrete's advertisements are literally false, establishing standing under Breathasure.[28]   It bases

---

[23] Breathasure, 204 F.3d at 96.

[24] Def.'s Supp. Br. at 6 (citing Breathasure, 204 F.3d at 95-96).

[25] Breathasure, 204 F.3d at 94.

[26] Def.'s Supp. Br. at 6.

[27] Pl.'s Resp. Exhibit C (Manuel Dep.) at 352 (emphasis added).

[28] Pl.'s Resp. at 5-6.

7

its reasonable belief of injury upon the following "facts:" (1) if a customer does not buy Ashford Formula, he or she will buy an ASTM compliant product or products, some of which are sold by Vexcon; (2) CureCrete agrees that it has a competitive advantage because Ashford Formula cures, densifies, seals and hardens all in one; and (3) Vexcon has been "shut out" of bidding jobs where Ashford Formula was used.[29]

The Court finds Vexcon's proffered "facts" insufficient as a basis for a reasonable belief of injury under all interpretations of standing under the Lanham Act. The standard announced in Parkway Baking for damages has not been met because Vexcon has failed to present evidence of customer reliance.[30] The Parkway Baking injunction standard has not been met, as Vexcon has failed to present evidence that the advertisements have a "tendency to deceive."[31] Vexcon's above-cited theories in support of its belief of injury are speculative and insufficient to overcome Manuel's testimony that Vexcon's products would not be used in place of the Ashford Formula. If a plaintiff concedes that there is no injury in fact under Article III, he cannot later argue that he has a reasonable belief in injury under the Lanham Act.

Under Johnson & Johnson-Merck and Breathasure, Vexcon argues that standing is presumed if the parties are (1) direct competitors; and (2) CureCrete's advertisement is literally false.[32] Furthermore, Vexcon argues that Manuel's deposition testimony was taken out of context, and that the portion of the deposition cited by CureCrete referred to his role as chairman

---

[29] Pl's Supp. Br. at 8.

[30] Parkway Baking Co., 255 F.2d at 649.

[31] Id.

[32] Pl.'s Resp. at 7; Breathasure, 204 F.3d at 96; Johnson & Johnson-Merck, 19 F.3d at 129.

of the ASTM committee, rather than as president of Vexcon.[33] The deposition in context, according to Vexcon, shows that Manuel's opinion, that Ashford Formula sales had no impact on Vexcon's business, was rendered at the time that he was acting on behalf of the ASTM, not as Vexcon's president. The portion of deposition testimony Vexcon cites in support of this assertion is as follows:

> Q: Mr. Manuel, during this period when you were attempting to persuade companies to stop saying that their silicate products cured concrete, did you consider whether you had a conflict of interest because you were selling silicate products that were not saying that those cured concrete?
>
> A: All of this persuasion was very gentle persuasion. And there was no persuasion that was more than that until after I was no longer chairman.
>
> Q: And why was that? Was it because you thought it would be a conflict of interest?
>
> A: I thought it was not proper. I don't know whether it was a conflict of interest or not.
>
> Q: Why did you think it was not proper?
>
> A: Because if I am speaking for the ASTM, I will speak on technical subjects. Once I am no longer chairman of the committee, I am free to talk about both business and technical.
>
> Q: Well, did you think that persuading others to stop saying their products cured concrete would potentially benefit Vexcon's business?
>
> A: No. It would benefit the industry.
>
> Q: You didn't think it was hurting your sales?
>
> A: I was not concerned. I did not make that determination until this type of thing.[34]

---

[33] Pl.'s Resp. at 8-9.

[34] Pl.'s Resp. Ex. C (Manuel Dep.) at 348-352.

Vexcon additionally points to the deposition testimony of CureCrete representatives to show that there is a money saving advantage to customers buying Ashford Formula because it hardens, seals, cures and densifies concrete all in one process, whereas ASTM compliant products perform only one or two of these functions at a time.[35]  This, Vexcon proffers, is sufficient and particularized evidence that there is an issue of fact regarding standing, and therefore that summary judgment should be denied.[36]

The Court is not persuaded by Vexcon's attempts to establish a belief of injury, nor its attempts to blur the dual role that Manuel assumes in this litigation.  Not only has Vexcon failed to state articulable facts to support an injury in fact, but through its president and corporate representative, it has also admitted that Vexcon will not be injured one way or another by the sale of Ashford Formula.[37]  Manuel also admitted that sales of Ashford Formula would not be replaced by sales of Vexcon's products.[38]  Vexcon has not presented evidence to overcome these clear admissions by Manuel.  Moreover, the context of the deposition upon which Vexcon relies only serves to highlight Manuel's motives to "gently persuade" companies to stop selling certain products.[39]  This is not evidence supporting a belief of injury in fact, as the Court does not find that Manuel's motives as chairman of the ASTM committee negate his admissions or opinions as president of Vexcon.

---

[35] Pl.'s Resp. at 7.

[36] Id. at 8.

[37] Pl.'s Resp. Ex. C (Manuel Dep.) at 351(stating "[i]t would have a neutral effect").

[38] Id. at 352 (answering the question "so it would not mean you would sell more products," with the answer "that's what it would mean").

[39] Id. at 348.

Additionally, Vexcon's reliance on the Breathasure case is unsupported by evidence. Breathasure does not state that any direct competitor may presume standing.[40] Rather, the Breathasure Court distinguished two cases requiring proof beyond a plaintiff's subjective belief of injury to establish standing, and sought to establish the degree of evidence needed to confer standing when: (1) the advertisement is literally false; and (2) a general competitor seeks an injunction, but not damages.[41] The Court found that in the narrow scope of an action for injunction between competitors "in general," advertisements that were found to be literally false were sufficient evidence of a reasonable belief of injury.[42] However, Breathasure is distinguishable because Vexcon cannot establish falsity, nor, therefore, the presumption of standing.

While Vexcon and CureCrete may be general competitors, the Court is not convinced that Vexcon has shown CureCrete's advertisements were literally false. Vexcon bears the burden of establishing standing through specific, articulable facts.[43] Thus, if Vexcon relies on Breathasure's analysis of standing, it is required to present evidence of falsity.[44] The challenged advertisement states that the Ashford Formula is an effective curing agent that will "uniformly

---

[40] Breathasure, 204 F.3d at 96 (holding that a competitor may show a reasonable belief of injury if the advertisement questioned is literally false when it only seeks an injunction).

[41] Id. at 94-96 (rejecting the reasoning in Johnson & Johnson v. Carter-Wallace, 631 F.2d 186 (2d Cir. 1980) (holding that a plaintiff must show a reasonable likelihood that the advertising has caused or will cause a loss of plaintiff's sales)); (rejecting Ortho Pharmaceutical Corp. v. Cosprophar, Inc., 32 F.3d 690 (2d Cir. 1994) (holding that plaintiff must show evidence that consumers would view defendant's cosmetics as a substitute for plaintiffs in order to establish standing).

[42] Id. at 96.

[43] Joint Stock Soc'y, 266 F.3d at 175.

[44] Lujan, 504 U.S. at 560-61.

cure" concrete.[45] To show falsity, Vexcon must show that the Ashford Formula does not effectively cure concrete.

Vexcon has established, and CureCrete does not disagree, that Ashford Formula does not comply with ASTM standards.[46] This is not, however, evidence that the Ashford Formula does not cure concrete.[47] Vexcon's expert reports admittedly use ASTM test 309 and ASTM test 1315 to measure curing.[48] CureCrete admits that its product does not cure in the method that ASTM recommends.[49] Simply stating the opinion that the Ashford Formula does not cure concrete in accordance with ASTM standards is not sufficient evidence to establish that the Ashford Formula does not effectively cure concrete under any and all standards. It is the latter evidence that is required to establish by a preponderance of the evidence, that CureCrete's advertisements are false, and thus establish a reasonable belief of injury.[50] Shy of producing evidence of falsity, and

---

[45] Compl. at 2.

[46] Letter to Roberta Jacobs-Meadyway, Esq., Oct. 1, 2007 by Vexcon expert Ben Edwards, Ph.D. at 1.

[47] As CureCrete highlights, the ASTM standard tests are not the exclusive tests for curing concrete. Def.'s Responses to Interrogatories at 5.

[48] Letter to Roberta Jacobs-Meadyway, Esq., Oct. 1, 2007 by Vexcon expert Ben Edwards, Ph.D. at 1. Although the opinion expressed by Vexcon's report is that the Ashford Formula does not provide the "water retention capability required for curing," this "requirement" is simply an ASTM recommended retention level. Pl.'s Response Exhibit D (Jones Dep.) at 74 (stating that the Ashford Formula exceeds the ASTM standard C309-93 test, but that with the Ashford Formula, curing does not require that moisture level).

[49] Pl.'s Response Exhibit D (Jones Dep.) at 74.

[50] Conversely, CureCrete's expert reports clarify that the Ashford Formula is in its own category, as it does not cure in either the accepted "wet curing" nor "membrane curing" methods. Def.'s Expert Report of Sandor Popovics, Ph.D., PE at 3-4. Dr. Popovics explains in his report that ASTM curing methods measure "liquid forming membranes," which require a water loss of no more than .55 kg/m2 in 72 hours. However, the Ashford Formula is not a liquid forming membrane, but rather a chemically reactive formula, so the water loss levels do not apply. Dr. Popovics expressed the opinion that the real test for whether concrete cures is whether the appropriate properties are developed, finding that the Ashford Formula produced these properties better than any of the other ASTM products tested. Id. at 7.

therefore evidence of likely harm, Vexcon has not met its burden.  Therefore, the Court finds no reasonable basis for Vexcon's belief of injury.  The Court finds that, even if there were standing under Article III, Vexcon has not established standing under the Lanham Act.

**D. Prudential Standing**

Lastly, Vexcon cannot demonstrate that it has prudential standing under the equitable rules adopted by the Third Circuit.  Prudential standing consists of judge-made rules designed to limit the number of cases deciding questions of "broad social import, where no individual rights would be vindicated."[51]  Prudential standing is interpreted by the Third Circuit to find the litigants who are "best suited to assert a particular claim."[52]  The Third Circuit has adopted a test for prudential standing as articulated by the Supreme Court in the antitrust context, which weighs five factors, no one of which carries more weight than any other, to determine whether a party is the best-suited plaintiff in a lawsuit.[53]  These factors are:

> (1) the nature of the plaintiff's alleged injury: Is the injury 'of a type that Congress sought to redress in providing a private remedy for violations of the [Lanham Act];' (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages.[54]

The Third Circuit thoroughly addressed prudential standing in the context of the Lanham Act in

---

[51] Joint Stock Soc'y, 266 F.3d at 179 (quoting Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 225 (3d Cir. 1998)).

[52] Id.

[53] Conte Bros., 165 F.3d at 233 (adopting the standard from Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters, 459 U.S. 519 (1983)).

[54] Joint Stock Soc'y, 266 F.3d at 179-80 (quoting Associated Gen. Contractors, 519 U.S. at 538).

Joint Stock Society v. UDV North America, Inc.[55] In Joint Stock, the plaintiff was a Russian vodka producer intending to market its vodka in the United States.[56] Defendant, an American vodka distiller, was alleged to mislead consumers by advertising that its vodka was Russian, when in fact it was not.[57] After reviewing all five factors for prudential standing, the Joint Stock Court concluded that the plaintiffs could not establish a direct effect of particular injury, and that the damages were highly speculative because the Russian producers had not even attempted to join the United States market for selling vodka.[58]

Under the direction of the Court, the parties submitted briefs on the application of Joint Stock to the present inquiry. CureCrete argues that Joint Stock is controlling law, as Vexcon cannot establish that it directly competes for the same customers as CureCrete.[59] Vexcon maintains that Joint Stock is distinguishable from the present case because the plaintiffs in Joint Stock were not competitors, as they did not market their product in the same country as defendants.[60] Vexcon again asserts that it is a direct, individual competitor of CureCrete, and presents the expert economic report of Rod Burkert.[61] Burkert calculated damages based on the assumption of liability, and found that Vexcon would be entitled to 1/8 of the sales of Ashford

---

[55] Id. at 179.

[56] Id. at 170.

[57] Id.

[58] Id. at 185.

[59] Def.'s Supp. Br. at 3.

[60] Pl.'s Supp. Br. at 2.

[61] Pl.'s Sur-Reply at 3; Exhibit A "Expert Report of Rod. P. Burkert, CPA/ABV, CVA Related to the Economic Loss of Plaintiff."

Formula, as it represents 1/8 of the concrete product market.[62]

The Court agrees with CureCrete, finding that <u>Joint Stock</u> is controlling law. Vexcon offers expert evidence in its attempt to show that it is competing for the same customers as those buying Ashford Formula. The Court cannot rely upon assumptions to establish standing, and does not find articulable, specific facts that Vexcon will be harmed, has been harmed, or is likely to be harmed by the sale of Ashford Formula, nor by its alleged false advertisement. Vexcon's expert report does not present evidence of injury. It does not present a connection between sales of Ashford Formula and a competing Vexcon product. It is therefore irrelevant to the determination of standing. While it may be true that Vexcon sells 1/8 of the concrete product market, the report assumes that consumers would buy Vexcon's products as a replacement for Ashford Formula, an assumption rebutted by the deposition testimony of its own president and corporate representative.[63] An injury cannot and will not be presumed by this Court without specific supporting evidence, which Vexcon has failed to present here. Therefore, Vexcon has not established prudential standing as it is defined by the Third Circuit.

**CONCLUSION**

Viewing the facts in the light most favorable to the non-moving party, the Court nonetheless finds that Plaintiff lacks standing to bring this suit. Vexcon has failed to show an injury in fact, much less a reasonable belief that it will be injured as a result of the alleged false advertising of Ashford Formula. Thus, the Court will grant summary judgment on the standing

---

[62] Pl.'s Sur-Reply Exhibit A at 3.

[63] "I believe that when we look at the specifications that exist, when they have them, they don't say to use Vexcon products in place of that. They just say cure the concrete in the following methods, and the method in use today and for the last eight or nine years is with curing blankets. So it makes no difference to Vexcon's business." Pl.'s Resp. Ex. C (Manuel Dep.) at 352.

issue, thereby mooting all other outstanding motions.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VEXCON CHEMICALS, INC.,** : | |
| : | |
| Plaintiff, : | |
| vs. : | CIVIL NO. 07-943 |
| : | |
| **CURECRETE CHEMICAL CO., INC.,** : | |
| : | |
| Defendant. : | |

### ORDER

**AND NOW**, this 28th day of March, 2008, upon consideration of Defendant CureCrete's Motion for Summary Judgment based on lack of standing [Doc. No. 24], Plaintiff's Response [Doc. No. 30], Defendant's Reply [Doc. No. 46], Plaintiff's Sur-Reply [Doc. No. 51], and the parties' supplemental briefs [Docs. No. 83, 84], it is hereby

**ORDERED** that Defendant's Motion for Alternative Method Summary Judgment is **GRANTED**; Judgment is entered in favor of Defendant, CureCrete Chemical Co., Inc.;

**ORDERED** that all outstanding Motions [Docs. No. 49, 54, 57, 63, 64, 93, 94], are dismissed as **MOOT**.

The Clerk of Court is directed to **CLOSE** this case.

It is so **ORDERED**.

                                                  **BY THE COURT:**
                                                  /s/ Cynthia M. Rufe

                                                  _____
                                                  **CYNTHIA M. RUFE, J.**